IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES RICE | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| TOM MCGINLEY, *et al.* | : | NO. 22-5105 |

## REPORT AND RECOMMENDATION

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                                         October 23, 2023

Presently before the court is a counseled Petition for a Writ of Habeas Corpus filed by Charles Rice ("Petitioner"), pursuant to 28 U.S.C. § 2254. Petitioner is a state prisoner serving a 30-to-60-year term of incarceration, for conviction on four counts of attempted homicide and related offenses, at the State Correctional Institution-Coal Township. Petitioner seeks habeas relief based upon claims of ineffective assistance of counsel, a due process violation, and cumulative error. The Honorable Nitza I. Quiñones Alejandro referred this matter to the undersigned for preparation of a Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B). The Commonwealth has conceded that trial counsel rendered ineffective assistance by stipulating to evidence that provided a motive for the charged shootings. Hence, habeas relief is warranted on that claim.

### I.   BACKGROUND[1]

On September 3, 2011, Petitioner, who was 17 years old at the time, was together with Tyler Linder when someone shot at them. Petitioner was seriously injured and required abdominal surgery; Linder was not injured. Next, on the evening of September 25, 2011, two men rounded a

---

[1] Since the Commonwealth concedes that habeas relief is warranted, the court will only include those facts necessary to understand the meritorious claim. Most of this background is gleaned from the Commonwealth's Response.

corner and began shooting at the home of Latrice Johnson's mother. Johnson, her daughter Latoya Lane, her son Khalief Ladson, and her niece Denean Thomas were injured. The Commonwealth charged Petitioner and Linder with this shooting. They were tried together.

The evidence of Petitioner's guilt was slender. Only one of the four victims was able to identify him and she admitted that the last time she had seen Petitioner was at least four years before the shooting. No weapon was ever recovered. Because the Commonwealth had little evidence pointing to Petitioner, it sought to strengthen its case by maintaining that Ladson was a suspect in the September 3 shooting that had severely injured Petitioner. This would provide motive for Petitioner to want to harm Ladson. The Commonwealth had a problem with this theory, because, at pretrial hearing held two days before trial, the trial court indicated that it would not allow the Commonwealth to present the evidence. Yet, on the morning of trial, the parties stipulated that a detective could testify that Ladson was a suspect in the September 3, 2011 shooting. This stipulation provided a motive for Petitioner to participate in the September 25, 2011 shootings.

At trial, the witness who identified Petitioner, stated that, after the shooting, Petitioner ran away. This was problematic testimony for the Commonwealth, because Petitioner was recovering from the September 3 shooting. He still had surgical staples in his stomach, could not walk without hunching over, was taking narcotic pain medication, and his surgeon testified that it was unlikely Petitioner would have been able to stand up straight, let alone run, on September 25, 2011.

After trial, the jury deliberated for two days and announced that they had reached a verdict as to one defendant but were at an impasse as to the other. The jury delivered the verdict, which the court did not announce, but sealed it in an envelope.[2] The trial court instructed the jury to

---

[2] The record does not reveal which defendant's fate the jury resolved first.

continue deliberating on the other defendant. The next day, the jury announced its verdict: Linder was not guilty as to all charges and Petitioner was guilty as to all charges. Petitioner was sentenced to 30-to-60 years of incarceration. He then pursued an unsuccessful direct appeal.

Next, Petitioner filed a state collateral attack on his conviction, under the Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. §§ 9541-46. At the PCRA evidentiary hearing, trial counsel was unable to testify; she has since passed away. However, Petitioner's surgeon elaborated on his trial testimony and emphasized that it was virtually impossible for Petitioner to have run on the night of the crime; had he done so, his incision would have opened and his intestines would have started coming out. Despite this favorable testimony, the PCRA court denied relief; Petitioner unsuccessfully appealed.

On December 21, 2022, Petitioner filed his counseled habeas petition. One of his claims was that trial counsel rendered ineffective assistance, because she stipulated that Khalief Ladson, one of the victims, was a person of interest in the September 3, 2011 shooting of Petitioner. As noted above, this stipulation provided motive for Petitioner to shoot at Ladson, on September 25, 2011. The Commonwealth states that, although this claim is unexhausted and procedurally defaulted, it expressly waives its exhaustion and procedural default defenses. Resp. at 17-18. It further concedes that trial counsel's performance was deficient in making the stipulation in question and that Petitioner suffered prejudice from trial counsel's deficient conduct. *Id.* at 18-28. This court accepts the Commonwealth's concessions and recommends that habeas relief be granted.

## II.     DISCUSSION

**A.     Standard for Ineffective Assistance**

Federal habeas ineffective assistance of counsel claims are measured against the two-part

3

test announced in *Strickland v. Washington*, 466 U.S. 668 (1984).  First, the petitioner must show that "counsel's representation fell below an objective standard of reasonableness."  *Id.* at 688.  In making this determination, the court's scrutiny of counsel's performance must be "highly deferential."  *Id.* at 689.  The court should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Id.*  In short, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  *Id.* (quotation omitted).

Second, the petitioner must show that counsel's deficient performance "prejudiced the defense" by "depriv[ing] the [petitioner] of a fair trial, a trial whose result is reliable."  *Id.* at 687.  That is, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome," *id.*, but it is less than a preponderance of the evidence.  *Id.* at 693, 694.

If the petitioner fails to satisfy either prong of the *Strickland* test, there is no need to evaluate the other part, as his claim will fail.  *Id.* at 697.  Further, counsel will not be found ineffective for failing to present an unmeritorious claim or objection.  *Johnson v. Tennis*, 549 F.3d 296, 301 (3d Cir. 2008).

**B.     Application of the Standard**

    **1.     Deficient Performance**

At the hearing conducted two days before trial commenced, the trial court signaled that it would not allow the Commonwealth to present evidence that Ladson was a person of interest in

the September 3, 2011 shooting, wherein Petitioner was seriously injured. As noted, this was harmful to the Commonwealth because, without evidence of motive, its case against Petitioner was weak. Petitioner and the Commonwealth adequately explain why this evidence was not admissible, under Pennsylvania evidentiary law. Pet. Mem. of Law at 58-59; Resp. at 21-22. There are also appears to be no conceivable strategic reason for trial counsel to have stipulated to a motive for her client. Trial counsel's failure to apprehend this crucial point of state evidentiary law and the absence of any strategic reason for entering into the stipulation constitute deficient performance in violation of the *Strickland* standard. *See Hinton v. Alabama*, 571 U.S. 263, 274 (2014) (*per curiam*) (explaining that an attorney's ignorance of a point of law that is fundamental to her case can constitute deficient performance).

    **2**    **Prejudice**

The Commonwealth concedes that trial counsel's deficient performance prejudiced Petitioner. This court finds that the Commonwealth's case was weak, which is relevant to the prejudice determination, *see Strickland*, 466 U.S. at 696 (noting that a weak case is more likely to be affected by attorney error), and evidence that Petitioner had a motive to shoot Ladson was extremely helpful to the Commonwealth, which is precisely why the prosecutor sought to have it admitted. Furthermore, the length of time the jury deliberated before returning a verdict, *see Johnson v. Supt. Fayette SCI*, 949 F.3d 791, 805 (3d Cir. 2020) (noting that the length of jury deliberations is a relevant consideration when evaluating the strength of the prosecution's case), and the fact it acquitted Linder, for whom there was no motive evidence, indicates that Petitioner was prejudiced by the stipulation that permitted the jury to find he had a motive. Hence, Petitioner was denied his Sixth Amendment right to the effective assistance of counsel.

Accordingly, I make the following:

**RECOMMENDATION**

**AND NOW**, this 23rd day of October 2023, for the reasons contained in the preceding Report, it is hereby **RECOMMENDED** that habeas relief be **GRANTED**, with respect to Petitioner's claim that trial counsel was ineffective for stipulating to evidence that Khalief Ladson was a person of interest in the September 3, 2011 shooting, which caused Petitioner to be seriously injured.

It is further **RECOMMENDED** that, within 180 days of the order approving and adopting this Recommendation, the Commonwealth shall retry Petitioner, or release him from custody.

It be so **ORDERED**.

    */s/ Carol Sandra Moore Wells*
CAROL SANDRA MOORE WELLS
United State Magistrate Judge